Christopher J. Kayser, OSB #984244
Larkins Vacura Kayser LLP
121 SW Morrison St Suite 700
Portland, OR  97204
Telephone:  503-542-3111
cjkayser@lvklaw.com
Attorney for Marten Transport, Ltd.

Donald Bradley (to be admitted *pro hac vice*)
D.Bradley@MPGLAW.com
William Bossen (to be admitted *pro hac vice*)
W.Bossen@MPGLAW.com
Musick, Peeler & Garrett LLP
650 Town Center Drive Suite 1200
Costa Mesa, CA 92626

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| Marten Transport, Ltd., a Delaware Corporation<br><br>                    Plaintiff,<br><br>     v.<br><br>Trecore Construction Management, LLC, a Washington Limited Liability Company, Nelson Melo, an individual, and Monte Pershall, an individual<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Marten Transport, Ltd. ("Marten") hereby alleges:

### PARTIES, FEDERAL JURISDICTION, AND VENUE

1.     Marten is a corporation, organized under the laws of the state of Delaware, with its headquarters in Mondovi, Wisconsin.

2.     Defendant TreCore Construction Management, LLC ("TreCore") is a Limited Liability Company organized under the laws of the state of Washington, with its principal place

of business in the state of Washington and doing business in the state of Oregon.

3. Nelson Melo ("Melo") is the Chief Executive Officer and President of TreCore. His domicile is in the state of Washington. Monte Pershall ("Pershall") is the Senior Vice President of TreCore. His domicile is in the state of Washington. TreCore, Melo, and Pershall are sometimes hereafter collectively referred to as "Defendants."

4. As alleged in further detail below, the conduct of Defendants caused Marten to incur damages in an amount equal to or exceeding $629,223. Accordingly, pursuant to 28 U.S.C. §1332, diversity jurisdiction is proper, as this lawsuit is between citizens of different states, and the amount in controversy exceeds $75,000. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

5. Each Defendant at all times mentioned in this Complaint was an agent, principal, master, servant, employee, employer, partner, and/or joint venture of each of the other Defendants, and in doing the acts, things and/or omissions alleged in this Complaint, was acting within the course and scope of that agency, employment or representation, with the knowledge, consent, ratification, and approval of each of the other Defendants. Any allegation referring to more than one Defendant refers to all such Defendants, jointly and severally.

6. Marten is informed and believes and thereon alleges that Melo and Pershall acted in such a way as to exercise control over all Defendants, and used TreCore as a mere shell, instrument, or conduit for themselves. Marten is informed and believes and thereon alleges that Melo and Pershall act and operate through TreCore and that the purported separate legal existence of TreCore must be disregarded since Melo and Pershall have a unity of interest in TreCore, and that they used this entity for themselves. Melo and Pershall treated TreCore as their alter ego, and are therefore liable for any conduct of TreCore.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

### Against All Defendants

7. On or about December 8, 2016, Marten and Defendants entered into a written Contract pursuant to which Defendants would construct a parking lot facility at Wilsonville, Oregon ("Project") and Marten would pay Defendants $770,271.17 for that work ("Contract"). A complete and accurate copy of the Contract is attached hereto as Exhibit A.

8. Pursuant to Paragraph 11.3.2 of the Contract, Defendants were required to "promptly pay each subcontractor and supplier, upon receipt of payment from the owner, an amount determined in accordance with the terms of the applicable subcontracts and purchase orders."

9. Granite Construction ("Granite") was a subcontractor to Defendants under the Contract. Marten is informed and believes that Glacier Northwest dba Calportland was a material supplier to Porter W. Yett Co., Inc., one of Defendants' subcontractors on the Project.

10. Marten has paid Defendants in full for the work performed pursuant to the Contract, which payments included work performed by Defendants' subcontractors.

11. Defendants have failed to pay certain subcontractors and suppliers for work performed on the project. Defendants' subcontractor Granite Construction has not been paid. Marten is informed and believes and thereon alleges that additional subcontractors of Defendants have not been paid for work performed on the Project, including, but not limited to Porter W. Yett and Glacier Northwest dba Calportland.

12. On or about July 7, 2017, Granite Construction recorded a mechanics lien in the amount of $629,223.50 against Project real property owned by Marten.

13. Paragraph 11.2.2 of the Contract provides that the Defendants warrant that payments received from Marten shall "be free and clear of liens, claims, security interests or other encumbrances adverse to [Marten's] interests."

14. Defendants' failure to pay their subcontractors and resulting recording of at least one mechanics lien against Marten's property constitute breaches of the Contract. As a result of

these breaches, Marten has been damaged in an amount according to proof.

## SECOND CAUSE OF ACTION – INDEMNITY
### Against All Defendants

15. Marten incorporates by reference Paragraphs 1 through 14 above as if fully alleged here.

16. If Marten is held liable and responsible to Granite for damages based on the mechanics' lien Granite filed and any subsequent foreclosure action, it will be solely due to the conduct of Defendants, and each of them, as herein alleged. Therefore, Marten is entitled to be indemnified by Defendants, and each of them, should such liability arise.

17. Marten is entitled to complete indemnification by Defendants, and each of them, for any sum or sums for which it may be adjudicated liable to Granite, with costs of defense, costs of suit, and reasonable attorney's fees incurred therefrom.

18. Marten is incurring, and has incurred, attorney's fees, and other costs in connection with Granite's claims, the exact amount of which is unknown at this time. When they have been ascertained, Marten will seek leave of court to amend this Complaint to set forth the true nature and amount of those costs and expenses.

## THIRD CAUSE OF ACTION – FRAUD
### Against All Defendants

19. In or about December, 2016, Defendants, in connection with negotiations made with Marten related to the Contract, represented that TreCore had the ability and intent to comply with all of Defendants' obligations under the Contract, including using payments from Marten to pay Defendants' subcontractors.

20. Marten relied on these statements by Defendants, including statements made by Melo and Pershall, in agreeing to enter the Contract and in making Contract payments to TreCore.

21. Marten is informed and believes, and thereon alleges, that when Defendants, including Melo and Pershall, stated that they intended to comply with the Contract and to pay their subcontractors, that they in fact had no intent to pay their subcontractors and, to the contrary, intended to keep the proceeds of Marten's payments under the Contract for their own use.

22. As a result of Defendants' false representations as described above, and Defendants' subsequent failure to pay their subcontractors, Marten has been damaged in an amount according to proof.

23. Because Defendants have acted recklessly and intentionally and in wanton disregard of the harm that would occur when they falsely represented that they would use plaintiffs' funds in compliance with the Contract, they are liable for punitive damages in an amount to be determined at trial.

24. Marten hereby demands a trial by jury on all claims so triable.

WHEREFORE, Marten prays for relief as follows:

1. Actual damages according to proof;

2. Punitive damages according to proof;

3. An order providing that Defendants shall defend and indemnify Marten against all claims brought by Granite Construction and any other subcontractor that may make claims against the Project property;

4. For costs and attorneys' fees as allowed by law; and

5. For all other relief that the Court deems just and proper.

DATED: August 3, 2017

        LARKINS VACURA KAYSER LLP

        s/ Christopher J. Kayser
        Christopher J. Kayser, OSB #984244
        Larkins Vacura Kayser LLP
        121 SW Morrison St Suite 700
        Portland, OR 97204
        Telephone: 503-542-3111
        cjkayser@lvklaw.com
        Attorney for Marten Transport Ltd

        Donald Bradley (to be admitted *pro hac vice*)
        D.Bradley@MPGLAW.com
        William Bossen (to be admitted *pro hac vice*)
        W.Bossen@MPGLAW.com
        Musick, Peeler & Garrett LLP
        650 Town Center Drive Suite 1200
        Costa Mesa, CA 92626

*Trecore Construction Management* [handwritten]

### ARTICLE 1  THE CONTRACT DOCUMENTS

1.1 The Contractor shall complete the Work described in the Contract Documents for the Project. The Contract Documents consist of

    .1    this Agreement signed by the Owner and Contractor;

    .2    the drawings and specifications prepared by the Contractor, dated October 3, 2016, and enumerated as follows:

Drawings:

| Number | Title | Date |
|---|---|---|
| 1 of 1 | Google Earth Sketch | 10/3/16 |
| 1 of 1 | Phasing Layout | 10/3/16 |

### ARTICLE 2  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

The number of calendar days available to the Contractor to substantially complete the Work is the Contract Time. The date of commencement of the Work shall be on or about April 3, 2017 unless otherwise indicated below.

Phase #1 - West Parking Area Approx 85,000 SF (Based upon 30 day work schedule) - Full Access Required
Phase #2 - East Parking Area Approx 47,000 SF (Based upon 30 day work schedule) - Full Access Required
Calendar subject to adjustment as provided in Article 9 and Article 10.

### ARTICLE 3  CONTRACT SUM

3.1 Subject to additions and deductions in accordance with Article 9, the Contract Sum is:  **Seven Hundred Seventy Thousand Two Hundred Seventy-One Dollars and Seventeen cents** ($770,271.17).

3.2 For purposes of payment, the Contract Sum included the following values related to portions of the Work:

See ROM Proposal TRE #639

3.3 Allowances included in the Contract Sum, if any, are as follows:

Item  SDC FEES TO CITY OF WILSONVILLE ALLOWANCE    0 - *

3.4 The Contract Sum shall include all items and services necessary for the Work.

[handwritten: debora@trecoreconstruction.com]

[handwritten calculations in right margin:]
520,852.13+
249,419.04+
770,271.17-

0 - *

770,271.17×
0.25=
192,567.79 — 8000.
          121300.3000

[handwritten at bottom:]
Send 1/3
deposit 1/4

### ARTICLE 4  PAYMENT
4.1 Based on Contractor's Applications for Payment, the Owner shall pay the Contractor, in accordance with Article 11, as follows:

*25% Down Payment*
Monthly progress billings thereafter per industry standard to be paid Net 30 or less from time of invoice

4.2 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate below, or in the absence thereof, at the legal rate prevailing at the place of the Project.

12%

### ARTICLE 5  INSURANCE
5.1 The Contractor shall provide the Contractor's general liability and other insurance as follows:

| Type of Insurance | Limit of Liability ($0.00) |
|---|---|
| General Liability | $1,000,000 each occurrence |
| Automobile Liability | $1,000,000 combined single limit |
| Workers Compensation | $1,000,000 EL each accident |

5.2 The Owner shall provide property insurance to cover the value of the Owner's property, including any Work provided under this Agreement. The Contractor is entitled to receive an increase in the Contract Sum equal to the insurance proceeds related to a loss for damage to the Work covered by the Owner's property insurance.

5.3 The Contractor shall obtain an endorsement to its general liability insurance policy to cover the Contractor's obligations under Section 8.12.

5.4 Each party shall provide certificates of insurance showing their respective coverages prior to commencement of the Work.

5.5 Unless specifically precluded by the Owner's property insurance policy, the Owner and Contractor waive all rights against (1) each other and any of their subcontractors, suppliers, agents and employees, each of the other; and (2) consultants and any of their agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance or other insurance applicable to the Work.

### ARTICLE 6  GENERAL PROVISIONS
#### 6.1 The Contract
The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreement, either written or oral. The Contract may be amended or modified only by a written modification in accordance with Article 10.

#### 6.2 The Work
The term "Work" means the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided, or to be provided, by the Contractor to fulfill the Contractor's obligations.

#### 6.3 Intent
The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by owner shall be as binding as if required by all.

Exhibit A

### 6.4 Ownership and Use of Drawings, Specifications and Other Documents
Documents are prepared for use solely with respect to this Project. The Contractor, subcontractors, sub-subcontractors, and material or equipment suppliers are authorized to use and reproduce the instruments of service solely and exclusively for execution of the Work. The instruments of service may not be used for other Projects or for additions to this Project outside the scope of the Work without the specific written consent of the Contractor.

### ARTICLE 7  OWNER
#### 7.1 Information and Services Required of the Owner
**7.1.1** If the requested by the Contractor, the Owner shall furnish all necessary surveys and a legal description of the site.

**7.1.2** Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, the Owner shall obtain and pay for other necessary approvals, easements, assessments and charges.

#### 7.2 Owner's Right to Stop the Work
If the Contractor fails to correct Work which is not in accordance with the Contract Documents, the Owner may direct the Contractor in writing to stop the Work until the correction is made.

#### 7.3 Owner's Right to Carry Out the Work
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies, correct such deficiencies. In such case, the Contract Sum shall be adjusted to deduct the cost of correction from payments due the Contractor.

### ARTICLE 8  CONTRACTOR
#### 8.1 Review of Contract Documents and Field Conditions by Contractor
**8.1.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

**8.1.2** The Contractor shall carefully study and compare the Contract Documents with each other and with information furnished by the Owner. Before commencing activities, the Contractor shall (1) take field measurements and verify field conditions; and (2) carefully compare this and other information known to the Contractor with the Contract Documents.

#### 8.2 Contractor's Construction Schedule
The Contractor, shall prepare and submit for the Owner's information a Contractor's construction schedule for the Work.

#### 8.3 Supervision and Construction Procedures
**8.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portion of the Work.

#### 8.4 Labor and Materials
**8.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials equipment, tools, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work.

**8.4.2** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract Work. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

#### 8.5 Warranty
The Contractor warrants to the Owner that: (1) materials and equipment furnished under the Contract will be new and of good quality unless otherwise required or permitted by the Contract Documents; (2) the Work will be free from defects

not inherent in the quality required or permitted; and (3) the Work will conform to the requirements of the Contract Documents.

### 8.6 Taxes
The Contractor shall pay sales, consumer, use and similar taxes that are legally required when the Contract is executed.

### 8.7 Permits, Fees and Notices
**8.7.1** All Required Permits responsibility of the Contractor. The Contractor will coordinate inspections necessary for proper execution and completion of the Work.

**8.7.2** The Contractor shall comply with and give notices required by agencies having jurisdiction over the Work. If the Contractor performs Work knowing it to be contrary to applicable laws, statues, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume full responsibility for such Work and shall bear the attributable costs. The Contractor shall promptly notify the Architect in writing of any known inconsistencies in the Contract Documents with such governmental laws, rules and regulations.

### 8.8 Submittals
The Contractor shall promptly review, approve in writing and submit to the Owner Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents. Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents.

### 8.9 Use of Site
The Contractor shall confine operations at the site to areas permitted by law, ordinances permits, the Contract Documents and the Owner.

### 8.10 Cutting and Patching
The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

### 8.11 Cleaning Up
The Contractor shall keep the premises and surrounding area free from accumulation of debris and trash related to the Work. At the completion of the Work, the Contractor shall remove its tools, construction equipment, machinery and surplus material; and shall properly dispose of waste materials.

### 8.12 Indemnification
To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, consultants and agents and employees of any from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts the may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

### ARTICLE 09   CHANGES IN THE WORK
**9.1** The Owner, without invalidating the Contract, may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly in writing. If the Owner and Contractor can not agree to a change in the Contract Sum, the owner shall pay the Contractor its actual cost plus reasonable overhead and profit.

**9.2** If concealed or unknown physical conditions are encountered at the site that differ materially from those indicated in the Contract Documents or from those conditions ordinarily found to exist, the Contract Sum and Contract Time shall be subject to equitable adjustment.

### ARTICLE 10   TIME
10.1 Time limits stated in the Contract Documents are of the essence of the Contract.
 Project Commencement may be accomplished earlier than noted above by both Contractor / Owner revision approval.
10.2 If the Contractor is delayed at any time in progress of the Work by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, the Contract Time shall be subject to equitable adjustment.

### ARTICLE 11   PAYMENTS AND COMPLETION
#### 11.1 Contract Sum
The Contract Sum stated in the Agreement, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

#### 11.2 Applications for Payment
11.2.1 The Contractor shall submit to the Owner an itemized Application for Payment for Work completed in accordance with the values stated in the Agreement. Such Application shall be supported by data substantiating the Contractor's right to payment as the Owner may reasonably require. Payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment stored, and protected from damage, off the site at a location agreed upon in writing.

11.2.2
The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment, all Work for which Certificated for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or other encumbrances adverse to the Owner's interests.

#### 11.3 Progress Payments
11.3.1 The Owner shall make payment in the manner provided in the Contract Documents.

11.3.2 The Contractor shall promptly pay each subcontractor and supplier, upon receipt of payment from the Owner, an amount determined in accordance with the terms of the applicable subcontracts and purchase orders.

11.3.3 The Owner shall not have responsibility for payments to a subcontractor or supplier.

11.3.4 A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the requirements of the Contract Documents.

#### 11.4 Substantial Completion
11.4.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work or its intended use.

### ARTICLE 12   PROTECTION OF PERSONS AND PROPERTY
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs, including all those required by law in connection with performance of the Contract. The Contractor shall take reasonably precautions to prevent damage, injury or loss to employees on the Work, the Work and materials and equipment to be incorporated therein, and other property at the site or adjacent thereto. The Contractor shall promptly remedy damage and loss to property caused in whole or in part by the Contractor, or by anyone for whose acts the Contractor may be liable.

### ARTICLE 13   CORRECTION OF WORK
In addition to the Contractor's other obligations including warranties under the Contract, the Contractor shall, for a period of one year after Substantial Completion, correct work not conforming to the requirements of the Contract Documents.

Exhibit A

## ARTICLE 14   MISCELLANEOUS PROVISIONS
### 14.1 Assignment of Contract
Neither party to the Contract shall assign the Contract as a whole without written consent of the other.

### 14.2 Tests and Inspections
**14.2.1** At the appropriate times, the Contractor shall arrange tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities.

**14.2.2** The Contractor shall bear cost of tests, inspections or approvals that do not become requirements until after the Contract is executed. Said costs applicable only to current project, and not Contractor responsibility until post Contract execution.

### 14.3 Governing Law
The Contract shall be governed by the law of the place where the Project is located.

This Agreement entered into as of the day and year first written above.

_____
OWNER (Signature)

Steve Hale
(Printed name)

Dec 7 2016
(Date)

_____
OWNER (Signature)

_____
(Printed name)

_____
(Date)

_____
TréCore Construction Management, LLC
(Signature)

Nelson M Melo, President

12/8/16
(Date)

_____
TréCore Construction Management, LLC
(Signature)

Monté Pershall, Sr. Vice President

12/8/16
(Date)

Exhibit A

PROPOSAL TRE#639
MARTEN TRUCKING
PARKING LOT REPAIRS



4510 NE 68th Drive, Suite 104
Vancouver, WA 98661
360-574-7661 Office
360-984-6637 Fax
trecoreconstruction.com

## PROPOSAL TRE#639

### MARTEN TRUCKING PARKING LOT REPAIRS

Client: MARTEN TRUCKING LTD
Attention: WAYNE KAWSKI
Project: PROPOSAL TRE#639
Location: WILSONVILLE, OREGON

Proposed Scope of Work — PROPOSAL BASED UPON A REGULAR WORKING HOUR SCHEDULE — 10/5/2016

**PHASE #1 (WEST PARKING AREA APPROX. 85,000 SF):**
* DEMO / REMOVE / DISPOSE OF EXISTING APPROX. 56,000 SF OF FAILED AC / BASE.
* BACKFILL / COMPACT SUBGRADE AT NW CORNER OF PROPERTY TO OBTAIN ADDITIONAL PAVING AREA
* FURNISH / INSTALL SUBGRADE FABRIC
* FURNISH / INSTALL APPROX. 20" BASE
* FURNISH / INSTALL APPROX. 6" (3/4"-) LEVELING AGGREGATE
* PLACE / FINISH APPROX. 3" FINISH THICKNESS BASE AC
* PREP / PLACE / FINISH 300'x6'x10" THICK STRUCTURALLY REINFORCED (UPPER / LOWER MAT) CONCRETE LANDING PAD
* PREP / WASH EXISTING SURFACES NOT REMOVED - INSTALL GLASS GRID FABRIC - APPROX. 29,000 SF AREA
* PLACE / FINISH APPROX 4" FINISH THICKNESS FINAL COURSE AC OVER ENTIRE APPROX. 85,000 SF AREA
* RESTRIPE IN ORDER TO OBTAIN ADDITIONAL PARKING STALLS (SEE ATTACHED SKETCH)

**PHASE #1 FUEL STATION ADDER OPTION:**
* RELOCATE EXISTING FUEL STATION APPROX. 80' WESTERLY. (SEE ATTACHED SKETCH)
* RELOCATION TO INCLUDE:
1. RELOCATE ALL PLUMBING / ELECTRICAL AS REQUIRED FOR RELOCATED FUEL TANK / POLY TANK / STATION
2. NEW APPROX 90'x60'x12" THICK STRUCTURALLY REINFORCED FOUNDATION(S) AND SOG
3. NEW TRENCH DRAINS WITHIN NEW SOG - UNDERGROUND PLUMBING TO TRAVEL TO EXISTING OIL/WATER SEPERATOR
4. NEW APPROX 90'x60'x16' CLEAR HEIGHT CANOPY OVER RELOCATED FUEL STATION
5. NEW LED LIGHTING BELOW NEW CANOPY
6. RELOCATE FUEL TANK ONTO NEW STRUCTURALLY REINFORCED FOUNDATION
7. RELOCATE POLY TANK ONTO NEW STRUCTURALLY REINFORECED FOUNDATION
8. STRUCTURAL BOLLARD PROTECTION AROUND PERIMETER OF FUELING STATION / FUEL TANK / POLY TANK
9. CLEAN / PREP / PAINT EXISTING FUEL TANK
10. CLEAN / PREP / PAINT NEW CANOPY, BOLLARDS AND ALL NEW COMPONENTS

**PHASE #1 SECURITY STATION ADDER OPTION:**
* PROVIDE / INSTALL NEW SECURITY STATION AT WESTERLY ENTRANCE
* SECURITY STATION TO INCLUDE:
1. SUPPLY / INSTALL ALL PLUMBING / ELECTRICAL AS REQUIRED FOR NEW SECURITY STATION / SECURITY GATE
2. NEW STRUCTURALLY REINFORCED FOUNDATION(S) AND SOG AT NEW SECURITY STATION LOCATION
3. SUPPLY / INSTALL NEW GAURD STATION SHACK
4. SUPPLY / INSTALL NEW RELOCATED SECURITY GATE ENTRANCE (SEE ATTACHED SKETCH)
5. NEW GATE OPERATORS / CONTROLS
6. STRUCTURAL BOLLARD PROTECTION AROUND PERIMETER OF SECURITY STATION AND OPERATOR PROTECTION
9. CLEAN / PREP / PAINT

**PHASE #2 (EAST PARKING AREA APPROX. 47,000 SF):**
* DEMO / REMOVE / DISPOSE OF EXISTING APPROX. 20,000 SF OF FAILED AC / BASE.
* FURNISH / INSTALL SUBGRADE FABRIC
* FURNISH / INSTALL APPROX. 20" BASE
* FURNISH / INSTALL APPROX. 6" (3/4"-) LEVELING AGGREGATE
* PLACE / FINISH APPROX. 3" FINISH THICKNESS BASE AC
* PREP / PLACE / FINISH 220'x6'x10" THICK STRUCTURALLY REINFORCED (UPPER / LOWER MAT) CONCRETE LANDING PAD
* PREP / WASH EXISTING SURFACES NOT REMOVED - INSTALL GLASS GRID FABRIC - APPROX. 27,000 SF AREA
* PLACE / FINISH APPROX 4" FINISH THICKNESS FINAL COURSE AC OVER ENTIRE APPROX. 47,000 SF AREA
* RESTRIPE IN ORDER TO OBTAIN ADDITIONAL PARKING STALLS (SEE ATTACHED SKETCH)

*PROUDLY SERVING: WASHINGTON, OREGON, CALIFORNIA, MONTANA, COLORADO, ARIZONA, IDAHO, WYOMING*

Exhibit A

PROPOSAL TRE#639
MARTEN TRUCKING
PARKING LOT REPAIRS

| | |
|---|---|
| BELOW LINE ITEMS INCLUDES ALL APPLICABLE GENERAL CONDITIONS / PROJECT MANAGEMENT / ESTIMATING / ADMIN / SAFETY / SITE SUPERVISION / EQUIPMENT / MATERIAL / LABOR / TAXES / INSURANCE / ENGINEERING / ARCHITECTURE / PERMITTING (SDC FEES TO CITY OF WILSONVILLE ALLOWANCE WITHIN)/ SPECIAL INSPECTIONS | |
| PHASE #1 - WEST PARKING AREA APPROX 85,000 SF (BASED UPON 30 DAY WORK SCHEDULE) | $ 520,852.13 |
| PHASE #1 - FUEL STATION ADDER OPTION (BASED UPON AN ADDITIONAL 15 DAY WORK SCHEDULE CONDUCTED DURING PHASE #1 - PHASE #1 OVERALL SCHEDULE WOULD NOW BE A TOTAL OF 45 WORK DAYS) | $ 315,160.11 |
| PHASE #1 - SECURITY STATION ADDER OPTION (BASED UPON 30 DAY WORK SCHEDULE CONDUCTED DURING PHASE #1 - PHASE #1 OVERALL SCHEDULE WOULD NOW BE A TOTAL OF 60 WORK DAYS) | $ 280,226.00 |
| PHASE #2 - EAST PARKING AREA APPROX 47,000 SF (BASED UPON 20 DAY WORK SCHEDULE) | $ 249,419.04 |
| TOTAL PROPOSED PROJECT COSTS | $ 1,365,657.28 |

TréCore Construction Management proposal promoted by:

| Nelson M. Melo | Monte' R. Pershall | Craig H. Shartner |
|---|---|---|
| President | Sr. Vice President | Sr. Project Manager / Business Dev. |

**Exclusions:**

Any Specifics Not Noted Within
Special Governmental, Enforcement Agency, or Administrative filings, or notifications. GC liability and or responsibility for unknown existing environmental, storm water, structural soils conditions and or substrate contamination. Costs of special and or specific excavation in handling or removal of existing materials is not assumed within this scope of work. TréCore Construction Management LLC will not assume unexpected potential environmental fines/citations regarding current and/or site soils and or structural conditions. Scope excludes unexpected subgrade and or structural SOG and or sanitary main line undermining existing compromised conditions.

**Included:**

All work to be completed in a professional workman like manner to a minimum of industry standards. Any alteration or deviation from the above specifications impacting schedule and/or costs impacts will be executed only upon (Senior directive) and/or approval by client(s) and appropriate authorized TreCore Senior management's representation. All scheduling deadlines are contingent to a provided safe and accessible jobsite environment with acceptable working conditions. Factors beyond GC's direct control not limited to weather and/or unforeseen conditions that may impact schedule, milestones and or final delivery date(s) along with overall preapproved budgeting. All work performed unless specifically noted is currently budgeted to be executed during normal industry daylight and weekly hours. Proposed budget within may be market adjusted post 30 days of receipt and or date noted within.

**Disclaimer**

The General Contractor makes every reasonable effort to determine existing conditions prior to providing budgeting applicable to above scope of work proposed. However, in the event that unforeseen conditions are discovered that may negatively impact proposed budgeting within, including but not limited to unexpected: buried debris, stone ledger, toxic waste, garbage, structural rubble, historical artifacts, etc. The General Contractor and or its Assignees, Representatives and or Trades and Vendors will notify our Client(s) and assumably request for a Change Order to be executed. In the event in which the progress and/or project schedule milestones of the project is compromised due to unforeseen conditions, the General Contractor and or its Assignees will immediately notify (in writing) the Client(s) and assumably request adjustment of overall project schedule and/or budgeting cost impacts and or job totals.

PROUDLY SERVING: WASHINGTON, OREGON, CALIFORNIA, MONTANA, COLORADO, ARIZONA, IDAHO, WYOMING

Exhibit A



**Standard Form of Agreement Between Owner and Contractor**

AGREEMENT made as of the 7th day of November in the year 2016.

BETWEEN the Owner:
*(Name, legal status, address and other information)*

Marten Transport, LTD.
29605 SW Kinsman Rd
Wilsonville OR 97070

and the Contractor:
*(Name, legal status, address and other information)*

TréCore Construction Management, LLC
4510 NE 68th Dr., Ste #104
Vancouver, WA 98661

for the following Project:
*(Name, location and detailed description)*

Marten Transport, LTD.
29605 SW Kinsman Rd
Wilsonville OR 97070

The Owner and Contractor agree as follows.

Exhibit A

TABLE OF ARTICLES

| | |
|---|---|
| 1 | THE CONTRACT DOCUMENTS |
| 2 | DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION DATE |
| 3 | CONTRACT SUM |
| 4 | PAYMENT |
| 5 | INSURANCE |
| 6 | GENERAL PROVISIONS |
| 7 | OWNER |
| 8 | CONTRACTOR |
| 09 | CHANGES IN THE WORK |
| 10 | TIME |
| 11 | PAYMENTS AND COMPLETION |
| 12 | PROTECTION OF PERSONS AND PROPERTY |
| 13 | CORRECTION OF WORK |
| 14 | MISCELLANEOUS PROVISIONS |

Exhibit A